**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GERARDO HERNANDEZ, ELIZABETH
PRADO,

*Petitioners,*

v.

MICHAEL B. MUKASEY, Attorney
General,

*Respondent.*

No. 04-72696

Agency Nos.
A74-797-178
A74-797-179

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 12, 2008*
Pasadena, California

Filed April 30, 2008

Before: Stephen S. Trott, Richard R. Clifton, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Meredith R. Brown of Glendale, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General, Richard M. Evens, and Paul Fiorino, of Washington, D.C., for the respondent.

**OPINION**

CALLAHAN, Circuit Judge:

Gerardo Hernandez and Elizabeth Prado, natives and citizens of Mexico, petition for review of the Board of Immigra-

tion Appeals' (BIA) decision denying their motion to reopen their deportation proceedings on the ground of ineffective assistance of counsel. Petitioners claim their deportation proceedings warrant reopening because their due process rights were violated by the deficient assistance of an immigration consultant. Petitioners contend they are entitled to raise an ineffective assistance of counsel claim, even though they concede they relied on an individual they knew was not an attorney. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). We hold that knowing reliance upon the advice of a non-attorney cannot support a claim for ineffective assistance of counsel in a removal proceeding.

## I.   BACKGROUND

Petitioners are Mexican nationals who entered the United States without inspection in 1989. In an attempt to legalize their immigration status in the United States, they contacted Estela Rodriguez, an immigration consultant, in Los Angeles, California. Promising to file papers that would enable them to obtain legal permanent residency, Ms. Rodriguez instead prepared applications for asylum, which were denied at the administrative level. On October 9, 1996, petitioners were served with Orders to Show Cause and Notices of Hearing, alleging they were subject to deportation for entry without inspection under former Section 241(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(B), and setting an immigration court hearing. Petitioners subsequently withdrew their applications for asylum and applied for relief in the form of suspension of deportation.

Petitioners allege Ms. Rodriguez provided them with deficient assistance throughout their removal proceedings. They claim Ms. Rodriguez advised them that it was unnecessary to have an attorney present in court during their merits hearings. They also allege she advised them that it was unnecessary to call witnesses, provide expert testimony, or submit documents in support of their applications for suspension of deportation.

Petitioners appeared pro se throughout their deportation proceedings.

During their deportation proceedings, the Immigration Judge (IJ) repeatedly asked petitioners if they wished to obtain counsel. Each time, petitioners affirmatively waived their right to obtain counsel. On at least two occasions, they were also provided with a list of attorneys who provided free legal services. When petitioners showed Ms. Rodriguez the list of free attorneys and discussed with her the possibility of retaining counsel, Ms. Rodriguez allegedly "tore up the list" and told them that "whatever she [said] was the same as what an attorney would tell [them]."

On August 9, 1999, the IJ pretermitted Hernandez's application for suspension of deportation. The IJ determined that Hernandez's conviction for domestic violence terminated his accrual of physical presence for purposes of suspension of deportation under the "stop-time rule" and that, as a result, he lacked the necessary seven years of physical presence in the United States. Hernandez's pro se appeal, allegedly prepared by Ms. Rodriguez, was dismissed by the BIA as untimely on December 17, 1999. His subsequent motion to reopen before the IJ, also allegedly prepared by Ms. Rodriguez, was denied by the IJ as untimely on March 7, 2001. The denial was affirmed by the BIA without an opinion on September 7, 2001.

On November 8, 1999, the IJ denied Prado's application for suspension of deportation on the ground that she had not shown the requisite level of hardship to herself or her U.S. citizen children. Prado filed a pro se appeal, allegedly prepared by Ms. Rodriguez. On January 8, 2003, the BIA affirmed the denial of suspension of deportation without an opinion. The BIA denied Prado's subsequent pro se motion to reconsider on the merits on July 16, 2003.

On October 14, 2003, almost four years after Hernandez's appeal was dismissed and ten months after Prado's appeal

was dismissed, petitioners, now represented by current counsel, filed a motion to reopen. They argued that they were denied due process and are entitled to have their deportation proceedings reopened because of the deficient assistance they received from Ms. Rodriguez. On April 28, 2004, the BIA denied their motion, and petitioners timely filed this petition for review.

## II.  STANDARD OF REVIEW

This court reviews the BIA's ruling on a motion to reopen for abuse of discretion. *Perez v. Mukasey*, 516 F.3d 770, 773 (9th Cir. 2008). Questions of law, as well as claims of due process violations, are reviewed de novo. *Castillo-Perez v. INS*, 212 F.3d 518, 523 (9th Cir. 2000).

## III.  ANALYSIS

Petitioners claim their deportation proceedings warrant reopening because their due process rights were violated by the deficient assistance of an immigration consultant. They assert an ineffective assistance of counsel claim even though they concede they did not retain counsel. The BIA found that petitioners could not base such a claim on the deficient advice of a non-attorney, relying on our decision in *Singh-Bhathal v. INS*, 170 F.3d 943 (9th Cir. 1999). In *Singh-Bhathal*, we held that reliance on the mistaken advice of a non-attorney immigration consultant was insufficient to demonstrate the "exceptional circumstances" necessary for reopening an in absentia deportation order. *Id.* at 946-47.

**[1]** "Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Lopez v. INS,* 775 F.2d 1015, 1017 (9th Cir. 1985). Federal law guarantees an individual the opportunity to obtain counsel of his own choice in "any removal proceedings before an immigra-

tion judge." 8 U.S.C. § 1362. We have found that this statutory right stems from the Fifth Amendment's guarantee of due process in deportation proceedings. *See Ray v. Gonzales*, 439 F.3d 582, 587 (9th Cir. 2006). Thus, if an individual chooses to retain counsel, his or her due process right "includes a right to *competent representation.*" *Id.* (italics in original). If counsel's assistance is deficient, and prejudice can be shown, we have recognized an ineffective assistance of counsel claim in removal proceedings. *See, e.g.*, *id.* at 590; *Castillo-Perez*, 212 F.3d at 526.

Ineffective assistance of counsel claims arise directly out of the duties and expectations created by an attorney's unique role in the legal system. The Supreme Court has recognized that, pursuant to the Sixth Amendment, a criminal defendant has a right to an attorney to ensure that he or she receives a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 684 (1984) ("[T]his Court has recognized that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial."). In *Strickland*, the Court reasoned that this "presumption" was justified by the legal profession's particular "skill and knowledge," its professional standards, and its "norms of practice." *Id.* at 688. Thus, where an attorney's performance was "outside the wide range of professionally competent assistance" and not "the result of reasonable professional judgment," *see id.* at 690, the proper functioning of the adversarial process itself was called into question, and a criminal defendant was entitled to a remedy in the form of a new trial (assuming he had also demonstrated prejudice). *Id.* at 691.

**[2]** Although the right to counsel in removal proceedings is statutory, 8 U.S.C. §§ 1229a(b)(4)(A), 1362, and does not derive from the Sixth Amendment, the BIA has also recognized that an attorney's special competence and duties lie at the heart of ineffective assistance of counsel claims. In *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), the BIA required that, to support a claim of ineffective assistance of counsel, an

aggrieved party must: (1) submit an affidavit setting forth in detail the agreement entered into with counsel regarding the person's representation; (2) present evidence that counsel was informed of the allegations of ineffective assistance and given an opportunity to respond; and (3) either show that a complaint against counsel was filed with the proper disciplinary authorities or explain why no such complaint was filed. *See Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000) (citing *Matter of Lozada*). These requirements were intended, in part, to "hold attorneys to appropriate standards of performance" in immigration proceedings, *Lo v. Ashcroft*, 341 F.3d 934, 937 (9th Cir. 2003), and we have generally required aliens to comply with *Lozada* in support of this goal. *See Iturribarria v. INS*, 321 F.3d 889, 900 (9th Cir. 2003) (noting that the *Lozada* requirements have been adopted by this court).

**[3]** Our decisions have also emphasized an attorney's unique role in removal proceedings. We have observed that "[t]he proliferation of immigration laws and regulations has aptly been called a labyrinth that only a lawyer could navigate." *See Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005); *see also Hernandez-Gil v. Gonzales*, 476 F.3d 803, 808 (9th Cir. 2007) (noting that "the statutory right to counsel exists so that an alien has a competent advocate acting on his or her behalf at removal proceedings"); *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1077 (9th Cir. 2005) ("[T]he right to counsel is important because of the difficulty aliens have in presenting their cases forcefully and effectively."). Our cases concerning the statutory right to counsel in removal proceedings particularly recognize the special skills and duties of attorneys. *See, e.g., Mendoza-Mazariegos v. Mukasey*, 509 F.3d 1074, 1085 (9th Cir. 2007) (finding prejudice because "competent counsel" would have obtained the required background check, and petitioner's failure to do so resulted in a denial of cancellation of removal); *Hernandez-Gil*, 476 F.3d at 809 (finding prejudice because '[a] trained immigration lawyer . . . is more familiar . . . with the stan-

dards and factors an IJ examines" and could have presented evidence more effectively).

**[4]** For these reasons, we have also held that reliance on the deficient advice of an attorney's agent was reasonable and so met the statutory standard of "exceptional circumstances" under 8 U.S.C. § 1229a(b)(5)(C)(i), warranting reopening of an individual's in absentia order of removal. *See Monjaraz-Munoz v. INS*, 327 F.3d 892, 897-98 (9th Cir. 2003).

**[5]** By contrast, we have held that reliance on a non-attorney immigration consultant's deficient advice did not meet that "exceptional circumstances" standard, where an individual chose to disregard the INS's written notice to appear and relied instead on the consultant's advice that he did not need to do so. *See Singh-Bhathal*, 170 F.3d at 946-47. We explained these contrasting results by again noting the "crucial difference" between attorneys and immigration consultants, particularly an attorney's "special role" in assisting individuals through our complex removal proceedings. *See Monjaraz-Munoz*, 327 F.3d at 897.

Retaining this distinction in the context of ineffective assistance of counsel claims is especially important. As *Strickland* makes clear, ineffective assistance of counsel claims presuppose the specific professional standards and legal obligations of attorneys. 466 U.S. at 687-89. Admission to the profession is usually regulated by state law: lawyers generally must have attended law school, passed a rigorous bar exam and met stringent character and fitness standards.[1] *See, e.g.,* CAL. BUS. & PROF. CODE §§ 6060, 6062; IDAHO CODE ANN. § 3-101. In most states, attorneys must also be members of their respec-

---

[1]The way in which the legal profession is regulated varies from state to state. Where admission standards are not established by state law, they are usually set by the state bar association with authority delegated from the state supreme court. *See, e.g.*, Ariz. R. S. Ct. 33-37; Wash. R. S. Ct., Admission to Practice Rules 3-5.

tive state bar associations, which have authority to establish and enforce rules of professional conduct, some of which may even have been incorporated into state law.[2] These rules and statutes, as noted by the Supreme Court in *Strickland*, impose on attorneys a range of obligations, including a duty of loyalty, a duty to avoid conflicts of interest, a duty to consult with the client, and "a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." 466 U.S. at 688. An attorney's failure to perform these duties may lead to the suspension or revocation of his or her license to practice law. *See, e.g.*, Ariz. R. S. Ct. 53, 60-61; CAL. BUS. & PROF. CODE §§ 6078, 6100-6106; IDAHO CODE ANN. § 3-301; Mont. R. S. Ct., Lawyer Disciplinary Enforcement Rules 8-9; MONT. CODE ANN. § 37-61-301; Wash. Rules for Enforcement of Lawyer Conduct, § 13.1.

[6] By contrast, immigration consultants have no formal legal training and are not subject to testing or licensing requirements that set and maintain standards of competence. There are no professional rules or statutes that impose ethical duties on a non-attorney consultant. Accordingly, the law has never presumed that their participation is necessary or desirable to ensure fairness in removal proceedings; indeed, they are specifically barred from representing individuals in removal proceedings.[3] *See* 8 C.F.R. § 1292.1(a)(3)(iv). In

---

[2]The extent to which attorneys' duties are statutory also varies from state to state. For example, in California, the rules of professional conduct are fully incorporated into state law, *see* CAL. BUS. & PROF. CODE § 6077, whereas in Arizona, the profession is entirely self-regulating and there is no statutory oversight. In Arizona, an attorney's professional conduct is regulated entirely by the Arizona Supreme Court, although it has delegated authority to set and enforce professional standards to the state bar association. *See* Ariz. R. S. Ct. 31-32.

[3]Federal regulations do permit individuals other than licensed attorneys to represent individuals in certain matters in immigration courts and before the BIA. However, they generally must meet certain standards, including demonstrating that they are being supervised by an attorney or otherwise have access to "adequate knowledge, information and experience" to provide competent representation. *See* 8 C.F.R. §§ 1292.1-2.

sum, non-attorney immigration consultants simply lack the expertise and legal and professional duties to their clients that are the necessary preconditions for ineffective assistance of counsel claims.

Furthermore, immigration judges are required at several stages of removal proceedings to advise each petitioner that he or she should consider retaining an attorney. Orders to Show Cause and Notices to Appear initially advise individuals that they may be represented by counsel. *See* 8 C.F.R. § 1003.15(b)(5). At the start of a removal hearing, immigration judges are required to advise each person that he or she is entitled to retain counsel, and the judge must have each person state at that time whether he or she desires representation. *See* 8 C.F.R. § 1240.10(a)(1). Federal regulations even encourage individuals to retain counsel by requiring immigration judges to advise them of the availability of free legal services located in the district in which the removal hearing is being held and to confirm that the alien has received the list of such programs. *See* 8 C.F.R. §§ 1240.10(a)(2), (a)(3).

**[7]** If, notwithstanding these notices, an individual chooses not to retain an attorney,[4] and instead knowingly relies on assistance from individuals not authorized to practice law, such a voluntary choice will not support a due process claim based on ineffective assistance of counsel. Because individuals have a statutory right to obtain counsel in removal proceedings, a failure to recognize that right, or an attorney's misdeeds, can interfere with the proceedings, resulting in a denial of due process. *See, e.g., Biwot*, 403 F.3d at 1099-1100 (denial of brief continuance to permit alien to obtain counsel violated statutory right to counsel); *Baltazar-Alcazar v. INS*, 386 F.3d 940, 946-47 (9th Cir. 2004) (predicating waiver of statutory right to counsel on summary disqualification of

---

[4]An alien may, of course, choose to appear pro se, so long as the decision not to retain counsel is knowing and voluntary. *See Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004).

entire law firm violated right to counsel). However, when petitioners knowingly and voluntarily waive their right to retain counsel, they are entitled to represent themselves before the IJ and the BIA, and to present their case as they see fit.

**[8]** Petitioners relied on Ms. Rodriguez, knowing she was an immigration consultant and not an attorney. The record indicates that, whatever initial confusion there may have been, petitioners knew early in their relationship with Ms. Rodriguez that she was not an attorney but continued to rely upon her advice for several years. The record indicates that the IJ repeatedly asked petitioners if they wished to obtain counsel, and that petitioners affirmatively declined. On at least two occasions, they were even provided with a list of attorneys who would provide free legal services. Having ensured that petitioners understood they were entitled to retain counsel and waived that right, the IJ properly allowed petitioners to proceed as they wished. Thus, this is not a case where petitioners were effectively denied counsel. To the contrary, petitioners affirmatively chose to rely on an individual they knew was not an attorney. Because petitioners' reliance on a non-attorney was not sanctioned by law, advice from Ms. Rodriguez did not affect the fundamental fairness of their proceedings. There was no denial of due process.

Our holding does not preclude pro se petitioners from bringing due process claims on other grounds. We have long held that an individual is entitled to due process in removal proceedings. *See generally Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999) ("The Fifth Amendment guarantees due process in deportation proceedings."). Each person remains entitled to "a full and fair hearing of his claims and a reasonable opportunity to present evidence on his behalf." *See Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000). We hold only that reliance upon the advice of a non-attorney cannot form the basis of a claim for ineffective assistance of counsel in a removal proceeding.

The petition for review is **DENIED**.